IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**KAYTLYNN R.,**[1]

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

Civ. No. 6:22-cv-00268-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Kytlynn R. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On October 23, 2018, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on March 24, 2018. Tr. 14. The applications were denied initially and upon reconsideration and, at Plaintiff's request, a telephonic hearing was held before an Administrative Law Judge ("ALJ") on February 9, 2021. *Id*. On March 12, 2021, the ALJ issued a

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

decision finding Plaintiff not disabled. Tr. 26. On December 16, 2021, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v);

416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 24, 2018. Tr. 16. The ALJ found that Plaintiff met the insured requirements of the Social Security Act through September 30, 2022. *Id.*

At step two, the ALJ found that Plaintiff had the following severe impairments: status post fracture of the C2 vertebrae, pelvis, left humerus, left tibia, left fibula, and left ankle. Tr. 16. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 18.

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: she can lift or carry twenty pounds occasionally and ten pounds frequently; she can stand, or walk with normal breaks, for a total of six hours in an eight-hour workday; she can sit, with normal breaks, for more than six hours in an eight-hour workday; she can push and pull with the upper and lower extremities within the weight restrictions given; she should avoid unprotected heights and moving machinery; she can occasionally climb ramps and stairs; she can occasionally balance, stoop, crouch, kneel, and crawl; she cannot climb ladders, ropes, or scaffolds. Tr. 18.

At step four, the ALJ found Plaintiff was able to perform her past relevant work as a cosmetologist and nail technician. Tr. 24. In the alternative, the ALJ found at step five that Plaintiff was capable of performing work that exists in significant numbers in the economy as a cafeteria busser; housekeeper, cleaner; electronics worker; call out operator; fund raiser; and food order clerk. Tr. 25-26. As a result, the ALJ found that Plaintiff was not disabled. Tr. 26.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error

that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly discounting Plaintiff's subjective symptom testimony; (2) improperly discounting lay witness testimony; and (3) improperly discounting medical opinion evidence. Plaintiff alleges that these errors infected the ALJ's formulation of the RFC and the vocational expert ("VE") hypothetical.

### I. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discounting the claimant's testimony regarding the severity of symptoms. *Id.*

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and

what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's testimony, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

In this case, Plaintiff was injured in a car accident in March 2018. Tr. 37, 43. Plaintiff testified that she suffers from bone pain in her arm, exacerbated by repetitive movement or holding her arm up. Tr. 39-40, 48. Plaintiff testified that she gets extremely dizzy and has to lie down throughout the day. Tr. 47. Plaintiff needs to elevate her leg or her ankle will become swollen and painful. *Id.* Plaintiff gets migraines frequently, which can last for days. Tr. 47-49. If Plaintiff moves her head from side to side it makes her "really dizzy." Tr. 48. Plaintiff testified that she is bedridden more than two days per week. *Id.* Plaintiff has a condition, positional tachycardia syndrome ("POTS"), first diagnosed in April 2019, which causes her blood pressure to drop and her pulse to rise, which causes "extreme fatigue and disorientation." Tr. 49. Plaintiff also has a large hematoma on her left thigh, which causes her pain when walking or sitting in chairs. Tr. 51-52. Plaintiff estimated that, on a normal day, she spends six hours with her legs elevated. Tr. 52. Plaintiff estimated that she could lift five pounds with both arms and that she could lift a plate with her left arm. Tr. 53.

Plaintiff testified that she returned to work to do spray tanning in March of 2019, but "that ended up not working out." Tr. 36. Plaintiff worked intermittently as a spray tanner, working one to three hours a week, for approximately one year. Tr. 37.

Plaintiff lives with her mother, who is retired. Tr. 38. Plaintiff watches television and does a "very minimal" amount of online research. *Id.* Plaintiff has a driver's license and a minimal amount of driving. *Id.* Plaintiff usually relies on her mother for driving. Tr. 39. Plaintiff helps with small tasks, but her mother does the bulk of the household chores. Tr. 43, 45. Plaintiff assists her mother with the cooking, but only prepares simple foods on her own. Tr. 45. Plaintiff will exercise for five minutes at a time using an elliptical. Tr. 40. Plaintiff would go out with friends occasionally during 2018 and 2019. Tr. 41. Plaintiff was able to take walks as part of her physical therapy. Tr. 50-51.

In addition to her testimony, Plaintiff prepared function reports in which she reported fatigue, dizziness, and continuous pain "in all areas" which interfered with her ability to do "all and any activities," including showering, cooking, driving, shopping, and household chores. Tr. 242. Plaintiff reported that she was unable to use her left arm suspended away from the body and was unable to carry objects with her left arm. Tr. 246. Plaintiff stated that she was limited to standing for thirty minutes and can only sit with her leg elevated. *Id.* Loss of ankle flexion made walking difficult for her. *Id.* She reported difficulty dressing and bathing due to pain and dizziness. Tr. 247. Plaintiff reported that her impairments caused her to have

difficulty lifting, standing, walking, sitting, climbing stairs, kneeling, squatting, reaching, bending, or completing tasks. Tr. 252. Plaintiff reported that on a "good day" she could walk for a quarter mile before needing to rest in bed for two hours. *Id*.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 19.

The ALJ found that the objective medical evidence did not support Plaintiff's claims and testimony. Tr. 20-21. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony," it is a factor that the ALJ can consider. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, a conflict between a claimant's testimony and the objective medical evidence is a proper basis for discounting subjective symptom testimony. *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999).

As previously noted, Plaintiff was in a car accident in March 2018 and, "[o]n discharge from the hospital in April of 2018, the claimant was non-weight bearing in a wheelchair and had to elevate her left leg at all times." Tr. 20; 380. The ALJ found that the "inability to use the left leg or left arm supported severe upper extremity, standing, and walking limitations but these did not last through 2018." Tr. 20. The record reflects that Plaintiff's condition improved with physical therapy. Tr. 838. In April 2018, Plaintiff was fitted with a walking boot and cervical collar. Tr. 618. By

June 2018, Plaintiff was "steadily improving." Tr. 619. In October 2018, Plaintiff had "minimally antalgic" gait on her left side and "increasing range of motion." Tr. 608. By December 2018, Plaintiff was standing and walking and had recovered some use of her arms. Tr. 837-40. Plaintiff had normal muscle tone and normal gait. Tr. 908.

In March 2019, one year after the crash, Plaintiff was found to have a hematoma on her left leg and the scar on her left arm was "contracting and causing pain particularly at distal aspect," which "[s]eems to be limiting function somewhat." Tr. 907-08. Plaintiff's treatment provider noted that Plaintiff "works as a hairdresser and has trouble completely extending elbow d/t pain at the scar." Tr. 907. As the ALJ noted, Tr. 21, Plaintiff was discharged from physical therapy in October 2019 because she met the goals of treatment. Tr. 1130. At the time, Plaintiff could carry twenty pounds, as "return to pedicure work demands," and could hold her arm in a hair styling position "for 5 min intervals without pain." Tr. 1129-30.

On this record, the Court concludes that the ALJ reasonably considered the objective medical evidence in assessing Plaintiff's subjective symptom testimony.

The ALJ also noted Plaintiff's daily activities, particularly that she went on hikes and "was walking one mile daily for exercise." Tr. 20. As noted, a claimant's daily activities are a valid consideration in assessing subjective symptom testimony. *Ghanim*, 763 F.3d at 1163. In December 2018, Plaintiff reported to her physical therapist that she went on a hike, which "turned out to be very strenuous with hills, slick surfaces and rough terrain." Tr. 838. Plaintiff reported that she could "hike 1

hour tolerance in high ankle boots," and that she could "complete 2 mens and 2 womens haircuts with no more than 2/10 pain." Tr. 1129. In March 2019, Plaintiff was "able to progress with reintroducing regular activities." Tr. 967. On this record, the ALJ reasonably considered Plaintiff's activities in assessing Plaintiff's subjective symptom testimony.

The Court concludes that the ALJ did not err is discounting Plaintiff's subjective symptom testimony.

## II.   Lay Witness Testimony

Plaintiff asserts that the ALJ erred by discounting the lay witness evidence presented by Plaintiff's mother, Katheryne R. "[L]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Here, Katheryne R. reported that Plaintiff's left arm prevented her from lifting and carrying and that her left ankle limited her ability to stand and walk. Tr. 223. Plaintiff also suffers from hives and a fear of driving. Tr. 223. Plaintiff can cook simple foods, but cannot manage complex cooking. Tr. 225. She can do light household chores, visit friends, and drive short distances. *Id*. Plaintiff can lift five pounds, never squat, carefully bend, stand for thirty minutes, reach with her right arm, walk half of a mile, sit for two hours, and never kneel. Tr. 228. She can climb one flight of stairs. *Id*. She has trouble completing tasks, has limited concentration,

and difficulty using her hands because of her of her left arm pain. *Id*. She uses a bone stimulator on her upper left arm and an ankle support brace. Tr. 229.

The ALJ did not directly discuss Katheryne R.'s statements. However, when a lay witness's testimony mirrors the plaintiff's testimony and the ALJ validly discounts the plaintiff's testimony, the failure to discuss the lay witness testimony is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) ("Because the ALJ had validly rejected all the limitations described by the lay witnesses in discussing Molina's testimony, we are confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination. Accordingly, the ALJ's error was harmless."). Here, Katheryne R.'s testimony is essentially the same as Plaintiff's testimony, which as discussed above, the Court concluded was properly discounted. The Court therefore concludes that the failure to expressly discuss Katheryne R.'s testimony was harmless error.

### III. Medical Opinion Evidence

Plaintiff asserts that the ALJ erred in discounting the medical opinions of Michael Feldman, M.D. and Cindy Shuman, P.A.-C. The Ninth Circuit has clarified that under the new regulations, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship—no longer applies." *Woods v. Kijakazi*, 32 F.4th 785, 787. Now, an ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. "The most important factors that the agency considers when evaluating the

persuasiveness of medical opinions are *supportability* and *consistency*." *Id*. at 791 (emphasis added, internal quotation marks and citations omitted). For supportability, the regulations provide that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As for consistency: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

### A. Dr. Feldman

Dr. Feldman prepared a medical source statement for Plaintiff in December 2020. Tr. 1155-58. In his report, Dr. Feldman stated that Plaintiff was "unable to carry more than 5lbs and at this wt only for short distances." Tr. 1155. Plaintiff could stand and walk for less than two hours in an eight-hour day and could sit for about two hours in an eight-hour day. Tr. 1155-56. Plaintiff could sit for ninety minutes and stand for five minutes before changing position. Tr. 1156. She would need to lie down every two hours. *Id*. She could never stoop, crouch, climb stairs or ladders, kneel, crawl, or balance. Tr. 1157. She was restricted in her ability to reach, handle, push and pull. *Id*. She needed to avoid all exposure to extreme cold, extreme heat, wetness, humidity, and hazards and needed to avoid concentrated exposure to

noise, fumes, odors, dusts, gases, and poor ventilation. *Id*. Dr. Feldman reported that his findings were based on demonstrable orthostatic tachycardia and orthostatic hypotension. Tr. 1158. Dr. Feldman opined that Plaintiff would be absent from work more than three times per month and that she was unable to work full-time. Tr. 1158.

The ALJ found Dr. Feldman's opinion unpersuasive. Tr. 23. First, the ALJ noted that "Dr. Feldman's own findings of normal neurological signs centrally and in all extremities do not support these extreme lifting, standing, walking, and postural limitations." *Id*. This is supported by the record. Tr. 911 (April 2019, finding nonfocal motor exam); 917 (June 2019, finding same); 1135 (April 2020, finding same); 1146 (October 2020, finding same); 1209 (January 2021, finding same).

The ALJ also found that Dr. Feldman's opinion was inconsistent with other medical evidence in the record. Tr. 23. In April 2019, Dr. Aaron Askew found "mildly antalgic" gait, "[g]ood range of motion of the shoulder and elbow," and "excellent neutral alignment" of Plaintiff's left ankle with minimal swelling and minimal tenderness to palpation. Tr. 1173. Dr. Askew found that Plaintiff "can expect very slow improvement in ankle motion over the years," but she "has a stable ankle that is quite functional" and "at this point her fracture is healed." Tr. 1174. In May 2019, Dr. Askew found a mildly antalgic gait, with "good range of motion and alignment with minimal swelling" in Plaintiff's left ankle. Tr. 1176. Plaintiff's x-rays were unremarkable. Tr. 1174. Plaintiff was also found to have normal or near normal strength in her physical therapy examinations. Tr. 1128. The Court concludes that

the ALJ reasonably found that Dr. Feldman's opinions were inconsistent with the other medical evidence in the record and particularly with the treatment records of Dr. Askew.

On this record, the Court concludes that the ALJ reasonably weighed the medical opinion of Dr. Feldman.

**B. Ms. Shuman**

Ms. Shuman provided a medical source statement for Plaintiff in January 2021. Tr. 1166-69. Ms. Shuman reported that Plaintiff's ability to lift and carry were unimpaired. Tr. 1166. Ms. Shuman reported that Plaintiff could stand for "only 5-10 minutes before developing significant lightheadedness" and that she had "severely limited ankle mobility." *Id*. Mr. Shuman believed that Plaintiff was able to stand for less than two hours. *Id*. Ms. Shuman reported that Plaintiff could not sit for more than ninety minutes without needing to take a break to lie down due to her dizziness. *Id*. Plaintiff dizziness would require her to take frequent breaks to lie down and chronic pain in her left leg and loss of range of motion would leave her "unable to stand for any period." Tr. 1167. Plaintiff would need to lie down at unpredictable intervals, which Ms. Shuman estimated would be every sixty to ninety minutes. *Id*. Plaintiff could never stoop, crouch, climb stairs or ladders, kneel, crawl, or balance. Tr. 1168. She had limitations in her ability to reach, handle, push, or pull. *Id*. She needed to avoid concentrated exposure to wetness and humidity and to avoid moderate exposure to extreme heat and cold, noise, fumes, odors, dusts, gases, and poor ventilation. *Id*. She needed to avoid all exposure to hazards such as machinery

and heights. *Id.* Ms. Shuman stated that her findings were based on Plaintiff's "orthostatic hypotension after a severe [motor vehicle accident], with profound disability due to her POTS symptoms," as well as chronic left lower leg pain. Tr. 1169. Plaintiff would be absent from work more than three times per month and Ms. Shuman did not believe that Plaintiff was capable of sustaining full-time employment. *Id.*

The ALJ found that Ms. Shuman's opinion concerning the lack of upper extremity limitations was "consistent with the healed left humerus and stable hardware," but that her opinion was otherwise unpersuasive. Tr. 24. First, the ALJ noted that Ms. Shuman's "lack of positive clinical signs do not support these extreme limitations." *Id.* Ms. Shuman's notes from June 2018 do not reflect any musculoskeletal limitations other than the note that Plaintiff was in a walking boot/cast. Tr. 619. Physical examination notes from October 2020 were also normal. Tr. 1151. In addition, the ALJ noted that Ms. Shuman's opinion was inconsistent with the treatment notes of Dr. Askew, Plaintiff's x-rays, and Plaintiff's physical therapy notes, as discussed in the previous section. Tr. 24. On this record, the Court concludes that the ALJ appropriately weighed the medical opinion of Ms. Shuman.

In sum the Court concludes that the ALJ did not err in weighing the medical opinion evidence.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this ___18th___ day of December 2023.

                                          /s/Ann Aiken
                                          ANN AIKEN
                                          United States District Judge